UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MARNA NOVAK and WILLIAM
NOVAK,

                Plaintiffs,

v.                                        Case No:  6:15-cv-215-Orl-41DCI

SAFECO INSURANCE COMPANY OF
ILLINOIS,

                Defendant.

_____

REPORT AND RECOMMENDATION

      This cause comes before the undersigned for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **Motion for Attorney Fees (Doc. 81)** |
| **FILED:** | **September 28, 2016** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part and DENIED in part**.

**Factual and Procedural Background**

      On September 27, 2013, in Brevard County, Florida, Plaintiff Marna Novak was involved in an automobile collision with an uninsured motorist, who died a few days after the collision. Doc. 1.  At the time of the collision, Defendant Safeco Insurance Company of Illinois (Safeco) provided automobile insurance to Mrs. Novak and her husband, Plaintiff William Novak, including underinsured motorist coverage in the amount of $100,000.  *Id.*  Before Plaintiffs filed any lawsuit, Safeco paid Plaintiffs $40,500 in underinsured motorist coverage in relation to the collision.  Doc. 42-1.  Thus, Safeco never contested coverage in this matter.

On January 5, 2015, Plaintiffs filed an action in state court in the Eighteenth Judicial Circuit in Brevard County, Florida, seeking recovery under the underinsured motorist provision of their insurance contract with Safeco by alleging a breach of contract claim as to Mrs. Novak and a loss of consortium claim as to Mr. Novak.  Doc. 1-1.

On January 21, 2015, Plaintiffs filed an Amended Complaint that added two claims titled as "bad faith" (one count as to each of Plaintiffs) citing to Fla. Stat. § 624.155.  Doc. 2.  Plaintiffs also added claims for attorney fees pursuant to Fla. Stat. § 627.428.  *Id.*

On February 11, 2015, Safeco removed the litigation to this Court.  Doc. 1.  Shortly thereafter, Safeco filed a motion to dismiss both "bad faith" counts and all of the requests for attorney fees.  Doc. 12.  In the motion to dismiss, Safeco asserted that the "bad faith" claims were actually requests for declaratory relief concerning "the damages potentially recoverable in an unaccrued, speculative, contingent bad faith lawsuit . . . ."  Doc. 12 at 2-3.  Safeco also asserted, citing Fla. Stat. § 627.727(8), that attorney fees were not recoverable by Plaintiffs pursuant to Fla. Stat. § 627.428 because Safeco never contested coverage.  Doc. 12 at 5-6.  Florida law provides that:

> The provisions of s. 627.428 do not apply to any action brought pursuant to this section against the uninsured motorist insurer unless there is a dispute over whether the policy provides coverage for an uninsured motorist proven to be liable for the accident.

Fla. Stat. § 627.727(8); *see* Doc. 12 at 2.

On March 3, 2015, instead of responding to the motion to dismiss, Plaintiffs filed a motion seeking to file a second amended complaint, in which motion Plaintiffs asserted that the filing of the second amended complaint would moot the issues raised in the motion to dismiss.  Doc. 16. In their motion, Plaintiffs sought to file a second amended complaint that removed the "bad faith" claims that Safeco attacked as improper requests for declaratory relief and sought to affirmatively

add a count alleging a bad faith failure to settle pursuant to Fla. Stat. § 624.155.  Doc. 16.  Plaintiffs

then sought to have the Court abate that bad faith claim pending the outcome of the underlying

contractual dispute.  Doc. 16.  By seeking to remove the "bad faith" declaratory judgment counts

through the filing of a second amended complaint and adding a new, hopefully-abated bad faith

claim, Plaintiffs expressly delineated the separate phases of this case:

> As discussed below, Plaintiffs suggest that the failure to settle counts should be abated pending resolution of the breach of contract action. Discovery specific to the additional failure to settle under Fla. Stat. §624.155 will therefore not commence until the resolution of the breach of contract claim. Due to the abatement, no prejudice could be shown to Safeco as they will not simultaneously defend both a breach of contract and a bad faith action. The Amendment would serve the interests of judicial efficiency as the issues of liability and damages which necessarily have to be litigated during the breach of contract count will not needlessly be re-litigated during a separate action for failure to settle.

Doc. 16 at 9.

On March 30, 2015, the Court entered an Order granting in part and denying in part the

motion to file a second amended complaint.  Doc. 22.  The Court granted Plaintiffs leave to file a

second amended complaint that, among other things, removed the declaratory relief claims clothed

as "bad faith", but denied Plaintiffs' request to add an actual bad faith claim to the second amended

complaint.  Doc. 22 at 4.  The Court reasoned that, "[t]here has been no determination of liability

or the extent of damages on the underlying insurance contract between these parties.  Thus,

Plaintiffs' bad faith claim would be premature."  Doc. 22 at 3.  The next day, Plaintiffs filed the

Second Amended Complaint.  Doc. 23.  The Court then denied the motion to dismiss as moot.

Doc. 24.

On April 9, 2015, the parties held a Case Management Conference.  Doc. 25.  On April 14,

2015, Safeco timely answered the second amended complaint and, two weeks later, the Court

entered the Case Management and Scheduling Order.  Docs. 26; 27.  Prior to the Case Management

Conference, the parties were not permitted to conduct discovery, unless otherwise ordered by the

Court.  *See* Local Rule 3.05(c)(2)(B); Doc. 14.  Discovery then commenced, although it appears

from the billing records that discovery was extremely limited.  Doc. 81-1.

On October 15, 2015, it is undisputed that Safeco paid Plaintiffs the remaining $59,500 in

benefits available through the underinsured motorist policy.  Doc. 84.

On October 27, 2015, Safeco filed a motion for entry of judgment in favor of Plaintiffs.

Doc. 36.  In the motion for entry of judgment, Safeco stated that it paid to Mrs. Novak the

remaining $59,500 available on Plaintiffs' underinsured motorist policy, for a total of $100,000.

Doc. 36 at 1.  Safeco requested that the Court enter judgment in favor of Plaintiffs in the amount

of $100,000, and close the case.  Doc. 36 at 8.  On October 29, 2015, Plaintiffs filed a motion to

file a third amended complaint, now seeking to add a ripened bad faith claim pursuant to Fla. Stat.

§ 624.155.  Doc. 38.  Each side opposed the other's motion.  Docs. 41; 42.  On February 9, 2016,

the Court held a status conference on the pending motions and allowed supplemental briefing from

the parties.  Doc. 44.

At the time, there was a pending matter before the Florida Supreme Court that impacted

the parties' respective positions and, on February 25, 2016, that court issued its opinion in *Fridman*

*v. Safeco Ins. Co. of Illinois*, 185 So.3d 1214 (Fla. 2016).  Once the Florida Supreme Court issued

its opinion, the parties filed a Joint Notice, Doc. 47, through which Safeco withdrew its opposition

to the motion to file a third amended complaint.

On April 25, 2016, Plaintiffs filed the Third Amended Complaint.  Doc. 54.  The Third

Amended Complaint contained three claims:  (1) breach of contract as to Mrs. Novak in relation

to the underinsured motorist coverage; (2) breach of contract as to Mr. Novak in relation to loss of

consortium; and (3) a claim asserting a bad faith failure to settle claims pursuant to Fla. Stat. § 624.155.  Doc. 54.  Plaintiffs requested attorney fees as to each claim.  Doc. 52.

On May 2, 2016, Safeco filed a motion to dismiss.  Doc. 55.  In this motion to dismiss, Safeco asserted that the newly-added bad faith claim should fail because the civil remedy notice filed by Plaintiffs did not meet the requirements of Florida law.  Doc. 55 at 3-9.  Further, Safeco requested that the Court strike the attorney fee requests in the first two counts alleging a breach of contract, because Fla. Stat. § 627.727(8) prevented the collection of attorney fees where an underinsured motorist insurer does not contest coverage, as Safeco had not contested in this case. Doc. 55 at 10-11.  Plaintiffs responded in opposition to the motion to dismiss, but, in a footnote and without discussing the controlling law or giving any explanation as to why Plaintiffs initially sought attorney fees in the breach of contract claims, Plaintiffs agreed to strike the requests for attorney fees in the first two claims.  Doc. 62 at 12 n.7.

On May 31, 2016, the deposition of Mrs. Novak took place, the first deposition in this case; the only other deposition being of Mr. Novak, which also took place on May 31, 2016.  Doc. 81-1 at 19.  On June 8, 2016, mediation was held, and ended in an impasse.  Doc. 68.  However, no order was ever necessary on the substantive claims in the pending motion to dismiss, because the Parties settled.

On July 8, 2016, Safeco provided a Proposal for Settlement to each Plaintiff and, on July 25, 2016, each Plaintiff accepted their respective Proposal for Settlement.  Doc. 84-1.  The settlement as to Mrs. Novak was for $50,000 and resolved all damages "except for attorneys' fees," which Safeco explicitly excluded from the settlement offer.  Doc. 84-1.  The settlement as to Mr. Novak was for $500 and resolved all damages without exception.  Doc. 84-1.  Both Proposals for Settlement warned that a failure to accept the settlement within 30 days constituted a rejection of

the settlement that could entitle Safeco to "an award of attorneys' fees *and costs*." Doc. 84-1 (emphasis added).

On July 26, 2016, Safeco filed a Notice of Partial Settlement that stated that Plaintiffs accepted a settlement proposal resolving all damages that could be awarded in a final judgment, with the sole exception of a reasonable attorney fee as to Mrs. Novak: "Safeco Insurance Company of Illinois has stipulated to Mrs. Novak's entitlement to reasonable attorneys' fees. Thus, the issue of the amount of attorneys' fees to be awarded to Mrs. Novak remains outstanding." Doc. 70. Without any objection to the Notice of Partial Settlement or any further filings by Plaintiffs, the Court entered an Order dismissing the case with prejudice, and retaining jurisdiction to award attorney fees. Doc. 72.

On September 2, 2016, both Plaintiffs filed a motion requesting attorney fees and costs for prosecuting the entirety of this litigation from its inception in October 2013 through August 2016; totaling $82,152.50 in attorney fees and $1,517.07 in costs. Doc. 73. Safeco then served discovery on Plaintiffs related to the requests for attorney fees and costs, and litigation ensued related to the amount of the fee requested. Docs. 74; 75; 76; 77; 78; 79; 80.

Finally, on September 28, 2016, Mrs. Novak filed an amended motion requesting attorney fees and costs, covering the same time periods and in the same amounts; totaling $82,152.50 in attorney fees and $1,517.07 in costs. Doc. 81. This is the motion now before the undersigned (the Motion).

**Analysis**

a. *The Lodestar Standard*

Mrs. Novak prevailed on a bad faith action brought pursuant to Fla. Stat. § 624.155 and is entitled to an award of reasonable attorney fees, as limited by her settlement agreement with

Safeco.  *See* Fla. Stat. § 112.3187(9)(d); Doc. 84-1.[1]  The Court uses the familiar "lodestar" method in determining a reasonable fee award, which is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).[2] The party moving for fees has the burden of establishing that the hourly rates and hours expended are reasonable.  *See Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).

"[A] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (quotations and citation omitted). In determining if the requested rate is reasonable, the Court may consider the applicable *Johnson* factors and may rely on its own knowledge and experience.  *Norman*, 836 F.2d at 1299-1300, 1303 ("The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value."); *see Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[3]  "The applicant bears the burden of producing

---

[1] Safeco does not contest Mrs. Novak's entitlement to an award of reasonable attorney fees, but instead contests the amount of fees.  *See* Doc. 84.

[2] Florida has adopted the federal lodestar method for calculating reasonable attorney fees.  *See e.g.*, *Fla. Patient's Comp. Fund v. Rowe*, 472 So.2d 1145, 1150 (Fla. 1985).

[3] The *Johnson* factors are: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal services properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee in the community; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and the ability of the attorney; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases.  *Johnson*, 488 F.2d at 717-19.  The Eleventh Circuit has subsequently explained that "district courts may, but are not required to, consider [the *Johnson*] factors since many 'usually are subsumed within the initial

satisfactory evidence that the requested rate is in line with prevailing market rates," which must be more than just "the affidavit of the attorney performing the work." *Norman*, 836 F.2d at 1299 (citations omitted). Instead, satisfactory evidence generally includes evidence of the rates charged by lawyers in similar circumstances, or opinion evidence of reasonable rates. *Id*.

As for the hours reasonably expended, counsel must exercise proper "billing judgment" and exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. In demonstrating that their hours are reasonable, counsel "should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303. Likewise, a party opposing a fee application should also submit objections and proof that are specific and reasonably precise. *ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). A fee opponent's failure to explain with specificity the particular hours he or she views as "excessive, redundant, or otherwise unnecessary" is generally fatal. *Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1333 (M.D. Fla. 2002) (citing *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387 (11th Cir. 1997)). "If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise unnecessary." *Barnes*, 168 F.3d at 428 (quotations omitted). When a court finds the number of hours billed to be unreasonably high, a court has two choices, it may

---

calculation of hours reasonably expended at a reasonable hourly rate.'" *Mock v. Bell Helicopter Textron, Inc.*, 456 F. App'x 799, 801 (11th Cir. 2012) (quoting *ADA v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 n.1 (11th Cir. 2006)).

review each entry and deduct the unreasonable time or it may reduce the number of hours by an across-the-board cut. *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008).

There is a strong presumption that the lodestar figure is reasonable. *Perdue v. Kenny A. ex rel Winn*, 559 U.S. 542, 553-54 (2010). Nevertheless, the Court may adjust the lodestar to account for the "results obtained." *Hensley*, 461 U.S. at 434. When "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.* at 436. Accordingly, the Court has discretion to reduce an award to account for situations where the lodestar figure is unreasonable in light of the limited success obtained. *See Id.* at 436-37.

b. *Reasonable Hourly Rates*

The parties disagree over what constitutes reasonable hourly rates for the work performed in this case. The chart below details the hourly rates sought by Mrs. Novak and those Safeco argues are appropriate.

| Biller | Role | Mrs. Novak's Requested Hourly Rates | Safeco's Argued Hourly Rates |
|---|---|---|---|
| Stephen Marino, Jr., Esq. | Co-Lead Counsel | $625 | $350 - $400 |
| Michal Meiler, Esq. | Associate | $275 | $170 - $220 |
| Diane Widjaya, Esq. | Associate | $290 | $190 - $250 |
| Karen Montas, Esq. | Co-Lead Counsel | $350 | $225 - $275 |
| Cheryl Lima | Paralegal | $135 | $90 - $105 |
| Linda Mulhall | Paralegal | $235 | $90 - $105 |
| Joan Pfister | Paralegal | $100 | $90 - $105 |

Docs. 81 at 6-8; 82; 84 at 19; 84-6 at 9, 12. Mrs. Novak maintains that the requested hourly rates are reasonable because: 1) the rates are consistent with the rates normally charged to and paid by other clients under similar circumstances; and 2) the rates are comparable with rates for legal services in the firms' respective locales, taking into consideration the attorneys' respective levels

of skills and expertise.  Doc. 81 at 8.  Both of those arguments are off the mark for calculating a reasonable rate under the lodestar method in this case, especially considering that neither of the "firms' respective locales" are the locale in which this case was brought.  In support of her position, Mrs. Novak filed an affidavit of her lead counsel, Mr. Marino, attesting in a fairly conclusory manner that his and the rates attributed to his associates are reasonable.  Doc. 82.

Safeco maintains that Mrs. Novak's requested hourly rates are unreasonably high and unsupported by Mrs. Novak's motion and its attached documents.  Doc. 84 at 14.  In furtherance of its position, Safeco filed the affidavit of attorney J. Scott Kirk to provide an expert opinion to the Court concerning the requested fees.  *See* Doc. 84-6.  Mr. Kirk has been a member of the Florida Bar since 1976, has litigated insurance coverage and bad faith actions, and has been designated as an expert witness in determining the amount of appropriate attorney fees pursuant to Fla. Stat. § 624.428.  Doc. 84-6 at 2.  Mr. Kirk opined that "the hourly rates being claimed by [Mrs. Novak] are excessive and do not represent reasonable hourly rates for handling this type of litigation within the Middle District of Florida."  Doc. 84-6 at 3.  As discussed herein, the undersigned agrees with Mr. Kirk's opinion.

Mrs. Novak provides absolutely no justification for the specific rates that she seeks in this case, which include rates of $675 per hour for Mr. Marino and $235 per hour for his paralegal.  It is Mrs. Novak's burden to support her requested hourly rates.  To carry that burden, Mrs. Novak submitted a two-page affidavit from her lead counsel stating, in substantive part, that: "The rates charged by VPL in the Novak matter are consistent with the rates charged to and paid by hourly clients of VPL on insurance matters . . . ."  Doc. 82-1.  The affidavit then lists six federal cases in this Division, all but one involving Mr. Marino's client Core Construction Services Southeast, Inc., a large construction company based in Sarasota, Florida that employs over 1,200 people.  *See*

www.coreconstruction.com.  The undersigned acknowledges that the rate counsel charges his or her clients may be considered in determining a reasonable rate.  *See Mayson v. Pierce*, 806 F.2d 1556, 1557 (11th Cir. 1989) (noting that billing rates charged to other clients is evidence of the reasonable hourly rate).  In this case, however, the undersigned gives little weight to Mr. Marino's affidavit, which mostly misses the point for the lodestar analysis, because it is from an attorney who performed work in this case, *Norman*, 836 F.2d at 1299, and because what Mr. Marino's corporate, hourly clients choose to pay him to retain his services in cases bearing little resemblance to the one before the Court bears little relevance to the undersigned's inquiry.  *See Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) ("The party seeking attorney's fees bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates.  By satisfactory evidence, we mean more than the affidavit of the attorney performing the work.") (internal citations and quotations omitted).

In addition to Mr. Marino's affidavit, Mrs. Novak cites to several cases, many of which involve locales not comparable to the Orlando Division and cases not similar to the case before the Court.  *See* Doc. 81 at 8 (citing *Banner Grp. v. United States*, Case No. 6:06-cv-706-Orl-28KRS, 2008 WL 4877000 (M.D. Fla. Sept. 16, 2008) (an order in an Orlando quiet title action against the United States awarding attorney fees pursuant to a contractual right); *CC-Aventura, Inc. v. Weitz Co., LLC*, 2008 WL 276057 (S.D. Fla. Jan. 31, 2008) (an order in a Miami case - possibly involving an insurance dispute - awarding $1,000 in attorney fees as a discovery sanction); *Parrot, Inc. v. Nicestuff Distributing Int'l, Inc.*, 2010 WL 680948 (S.D. Fla. Feb. 24, 2010) (an order in a Ft. Lauderdale breach of contract action awarding attorney fees pursuant to Florida's supplemental proceedings statute, Fla. Stat. § 56.29)).

Mr. Marino also cites to a single case involving himself that involved an insurance dispute in the Tampa Division. *See Rynd v. Nat'l Mut. Fire Ins. Co.*, Case No. 8:09-cv-1556-T-27TGW, 2012 WL 939387 (M.D. Fla. Jan. 25, 2012). In *Rynd*, the Tampa Division court awarded Mr. Marino an hourly rate of $425 per hour, identifying the appropriate Tampa rate as $400 per hour, and awarding Mr. Marino an additional $25 per hour for his "superior performance" in that particular case. *Id.* at *15 (also determining the rate for Mr. Marino's associates at $175-$180 per hour). Even in *Rynd*, though, the court in the Tampa Division refused to compensate Mr. Marino based on "Miami rates." *Rynd*, 2012 WL 939387 at *15; *Cook v. Law Offices of Forster & Garbus*, Case No. 6:10-cv-934-Orl-28KRS, 2010 WL 4941439, at *3 (M.D. Fla. Nov. 3, 2010) ("Hourly rates that may be reasonable in Miami are not necessarily reasonable in Orlando."). In *Rynd*, paralegal Linda Mulhall, for whom Mrs. Novak seeks $235 per hour, was compensated at a rate of $95 per hour. 2012 WL 939387 at *15; *see also Lender v. Geico Gen. Ins. Co.*, Case No. 09-22303-Civ-Gonzalez (S.D. Fla. October 31, 2014) (setting Ms. Mulhall's hourly rate at $125 per hour); *Essex Builders Grp., Inc. v. Amerisure Ins. Co.*, Case No. 6:04-cv-1838-Orl-22JGG, 2007 WL 9624720 (M.D. Fla. June 7, 2007) (setting Ms. Mulhall's hourly rate at $105 per hour).

Safeco identified other cases involving Mr. Marino and other associates and paralegals from his firm, all of which involved awards of hourly rates well below the fees requested in this case. *See Travelers Home & Marine Ins. Co. v. Calhoun*, Case No. 5:13-cv-251-Oc-22PRL, 2014 WL 1328968, at *5 (M.D. Fla. Apr. 2, 2014) (awarding Mr. Marino $350 per hour in an Ocala Division case and determining the rate for his associates at $200 per hour); *B-K Cypress Log Homes, Inc. v. Auto-Owners Ins. Co.*, 2011 WL 6151507, at *2 (N.D. Fla. Nov. 1, 2011) (awarding Mr. Marino $475 per hour in a Tallahassee case and determining the rate for his associate at $210 per hour); *Essex Builders*, 2007 WL 9624720, at *3 (awarding Mr. Marino $300 per hour in an

Orlando case).  While Safeco located no cases involving Ms. Montas, Safeco did direct the Court to *Kearney v. Auto-Owners Ins. Co.*, Case No. 8:06-cv-595-T-24TGW, 2011 WL 1527262, *3 (M.D. Fla. Apr. 21, 2011), which set an attorney of roughly Ms. Montas' experience, in 2011, in Tampa, in an insurance dispute case, at $225 per hour.  Finally, Mr. Kirk, in his affidavit, identifies several cases setting rates for attorneys and paralegals with comparable experience, in comparable cases, in this district.  *See* Doc. 84-6 at 10-11; *Diperna v. Geico General Ins. Co.*, Case No. 6:12-cv-687-Orl-36KRS, Doc. 204, *report and recommendation adopted in part and rejected in part by* 2016 WL 4158553 (M.D. Fla. Aug. 4, 2016) (in an insurance dispute in the Orlando Division, setting the hourly rate for counsel with 21 years' experience at $400 per hour, counsel with 7 and 10 years' experience at $225 per hour, and a paralegal at $100 per hour).  The undersigned gives considerable weight to Mr. Kirk's affidavit.

Upon due consideration, and taking into consideration the undersigned's own experience and expertise in this calculation, the undersigned will recommend that the hourly rates applicable to this case are as follows:

| Biller | Role | Hourly Rates |
|---|---|---|
| Stephen Marino, Jr., Esq. | Co-Lead Counsel | $450 |
| Michal Meiler, Esq. | Associate | $225 |
| Diane Widjaya, Esq. | Associate | $230 |
| Karen Montas, Esq. | Co-Lead Counsel | $275 |
| Cheryl Lima | Paralegal | $95 |
| Linda Mulhall | Paralegal | $125 |
| Joan Pfister | Paralegal | $95 |

*c. The Reasonable Number of Hours Billed*

*i. The Recovery of Attorney Fees Prior to October 15, 2015*

In the Motion, Mrs. Novak requests attorney fees for the entirety of the representation of both Plaintiffs in this case by two law firms: Johnson & Montas PA and Ver Ploeg & Lumpkin

P.A. [4] In claiming fees for the entirety of this case, Mrs. Novak states that fees for her and her husband's claims are impossible to separate and that her "breach of contract claim and her bad faith claim were inextricably intertwined" and involved "the exact same factual allegations." Doc. 81 at 11. By basing her argument for a full recovery of fees on the fact that her claims were inextricably intertwined, Mrs. Novak's argument implies, but never directly addresses, the fact that Fla. Stat. § 627.727(8) provides an exception - applicable to this case - to the general rule set forth in Fla. Stat. § 627.428 that a prevailing insured may recover attorney fees from her insurer. Despite the burden being on Mrs. Novak to establish her entitlement to her requested fee, Mrs. Novak never directly identifies this statutory issue for the Court.

As a starting point, Florida law allows for the recovery of attorney fees by a prevailing insured against her insurer in most circumstances:

> Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.

Fla. Stat. § 627.428(1).

There are, however, explicit exceptions to the foregoing fee-shifting provision of Florida law, including one directly applicable to this case:

---

[4] Through the Motion, Mrs. Novak's attorneys are requesting $82,152.50 in a case in which the total recovered damages equaled $110,000.00 (the $59,500 recovered in the underinsured motorist claim and the $50,500 recovered in the bad faith claim). That results in a request for a fee of approximately 74.6% of the recovery in this case. Further, according to the fee agreement with Ver Ploeg & Lumpkin P.A., that firm may be able to take an additional 15% of the recovered amount, or $16,500. Doc. 73-2 at 2. Thus, Mrs. Novak's attorneys appear to be requesting a fee that, if granted in full, would equal approximately 89.6% of the amount recovered.

> The provisions of s. 627.428 do not apply to any action brought pursuant to this section against the uninsured motorist insurer unless there is a dispute over whether the policy provides coverage for an uninsured motorist proven to be liable for the accident.

Fla. Stat. § 627.727(8). Here, Mrs. Novak brought an action against her uninsured motorist insurer and there was no dispute concerning coverage; the only dispute concerned the extent of liability and damages. Incredibly, Mrs. Novak never brings this provision of law to the Court's attention, although Mrs. Novak cites to a provision of the same statute a few paragraphs down the page, Fla. Stat § 627.727(10). In subsection 10 of that same statute, Florida law provides that:

> The damages recoverable from an uninsured motorist carrier in an action brought under s. 624.155 shall include the total amount of the claimant's damages, including the amount in excess of the policy limits, any interest on unpaid benefits, reasonable attorney's fees and costs, and any damages caused by a violation of a law of this state. The total amount of the claimant's damages is recoverable whether caused by an insurer or by a third-party tortfeasor.

Fla. Stat. § 627.727(10). Thus, Florida law, in near-consecutive subsections of the very same statue, delineates between the fees recoverable from an uninsured motorist claim and the fees recoverable from a resulting bad faith claim.

While the parties cited no case on point concerning the interplay between these subsections of the same statute, Florida case law supports the limitation and delineation of attorney fees awarded under Fla. Stat. § 627.428 between claims within the same action, using the exception in Fla. Stat. § 627.727(8). In *Moore v. Allstate Ins. Co.*, 570 So. 2d 291 (Fla. 1990), the Florida Supreme Court approved the decision of both the district and circuit courts, which limited the recovery of attorney fees for an insured, delineating between the coverage and liability phases of the same action:

> The district court agreed with the trial court's reasoning and held: Allstate's answer conceding on the coverage issue "finally dispose[d] of a discrete piece of litigation ... and qualifies for a fee."

> Under the language of section 627.727(8), the issue of coverage was not in dispute after Allstate's answer, and thus services rendered on the remaining issues were not susceptible of a section 627.428(1) award.

570 So. 2d at 293.  The courts in *Moore* delineated the fees by date; awarding, and approving the award of, attorney fees for the time during which coverage was contested, but disallowing the collection of fees going forward from the date the insurer conceded coverage.  *Id.*; *see also State Farm Mutual Ins. Co. v. Petersen*, 855 So. 2d 1248, 1250 (Fla. 4th DCA 2003) (holding that a prevailing insured was not entitled to attorney fees due to § 627.727(8), because the insurer in an underinsured motorist action did not contest coverage); *State Farm Mutual Ins. Co. v. Koster*, 582 So. 2d 735, 736 (Fla. 3d DCA 1991) (same).

Here, the timeline is reversed, but the concept is the same, and the reasoning in *Moore* is persuasive to the undersigned.  Mrs. Novak brought a breach of contract action for an underinsured motorist claim against Safeco.  It is undisputed that Safeco contested liability and damages, but did not contest coverage, on the underinsured motorist claim.  As such, Mrs. Novak could not recover attorney fees when she prevailed on that underinsured motorist claim.  Once she did prevail on the underinsured motorist claim, the Court permitted Mrs. Novak to proceed with her statutory bad faith claim.  It is undisputed that Mrs. Novak could collect a reasonable attorney fee from Safeco for her litigation of her bad faith claim.

As discussed herein, the undersigned finds that these discrete phases of her lawsuit can – and should – be delineated into discrete parts when determining the amount of a reasonable attorney fee under Fla. Stat. §§ 627.428(1) and 627.727(10).  There appears to be no case law in Florida dictating a contrary result, and any other reading of the applicable statutes would result in a ruling rendering Fla. Stat. § 627.727(8) meaningless in a case where attorney fees are recoverable

under Fla. Stat. § 627.727(10), *i.e.*, any bad faith case premised on an underlying uninsured motorist claim where coverage was not contested.

Further, Mrs. Novak, in a response to a motion to dismiss by Safeco, explicitly acknowledged the discrete nature of her claims and sought relief – *i.e.*, abatement – on that basis. Doc. 16 at 9. Specifically, Mrs. Novak recommended to the Court that the bad faith claim be abated so that the breach of contract claim could proceed, asserting that the discrete aspects of Mrs. Novak's claims could proceed one after the other. Doc. 16 at 9. In differentiating the temporal and substantive nature of her claims, she argued that Safeco suffered no prejudice by allowing her to proceed on both claims in the same complaint. Doc. 16 at 9. Now, in a different context, Mrs. Novak asserts that the claims are "inextricably intertwined" in all respects. Doc. 84 at 11. Mrs. Novak cannot have it both ways.

In the Motion now before the Court, Mrs. Novak cites several cases that she asserts support her position, but few actually do. Although not apparent from her motion, some of the cases she cites involve statutory schemes that are very dissimilar from those at issue here. *See Caplan v. 1616 E. Sunrise Motors, Inc.*, 522 So. 2d 920, 922 (Fla. 3d DCA 1988) (affirming an award of attorney fees under Florida's Deceptive and Unfair Trade Practices Act for a prevailing defendant, including fees related to unsuccessful counterclaims defendant raised during the course of the lawsuit); *Davis v. Locke*, 936 F.2d 1208, 1214 (11th Cir. 1991) (affirming an award of attorney fees to a plaintiff under 42 U.S.C. § 1988 in a federal civil rights action, including fees related to unsuccessful claims raised in the complaint).

Based on the caption of *Kowalski v. Jackson Nat'l Life Ins. Co.*, 2012 WL 4101567, at *6 (S.D. Fla Aug. 20, 2014) and Mrs. Novak's parenthetical of the case – "awarding fees for time spent litigating 'related claims'" – the undersigned had more hope that the case may support Mrs.

Novak's proposition.  Doc. 81 at 11.  However, *Kowalski* involved Florida's offer of judgment statute, Fla. Stat. § 768.79.  More importantly, the quoted language – "related claims" – never appears in the *Kowalski* order cited by Mrs. Novak.

The most compelling argument by Mrs. Novak involves her citations to *Fridman v. Safeco Ins. Co. of Illinois*, 185 So.3d 1214 (Fla. 2016) and *Allstate Indemnity Co. v. Ruiz*, 899 So.2d 1124 (Fla. 2005), for the proposition that the liability and damages determination in a breach of contract claim for underinsured motorist benefits is a prerequisite to, and an element of, a subsequent bad faith claim.  The Florida Supreme Court explained in *Fridman* that, "we conclude that the determination of damages obtained in the [underinsured motorist] action becomes a binding element of damages in the subsequent bad faith litigation against the same insurer . . . ." 185 So.3d at 1228.  Mrs. Novak then argues that, because one claim is a prerequisite to, and an element of, the other, she should be able to obtain attorney fees for her litigation of both claims.  That assertion is not without implicit logic, and the Florida legislature certainly could have made that the law.  However, that is not what the legislature chose to do.  Instead, the legislature took a tack that is, at least, of equal logic.  The legislature allowed an insured to contest the quantum of liability and damages in an underinsured motorist case, without fear of paying attorney fees, so long as it did not contest coverage.  *See* Fla. Stat. § 627.727(8).  However, if the insurer contested liability and damages in bad faith, and the insured prevailed in a claim for bad faith under Fla. Stat. § 624.155, then the insured could recover attorney fees for that bad faith claim.  *See* Fla. Stat. § 627.727(10).

Mrs. Novak's bad faith claim was not ripe, and could not commence, until Safeco paid the full amount of the underinsured motorist benefits to Mrs. Novak on October 15, 2015.  Just because Mrs. Novak intended from the outset of this litigation to assert a bad faith claim, and litigated this case in that manner, does not change the Court's analysis.  Accordingly, with the exception

discussed in this Report and Recommendation, the undersigned will disallow the vast majority of attorney fees claimed by Mrs. Novak prior to October 15, 2015.

The undersigned notes that Plaintiffs expended significant resources litigating the bad faith claim before it was ever ripe, even attempting to assert a declaratory action for "bad faith", all of which was withdrawn by Plaintiffs or disallowed by the Court.  Once Plaintiffs actually prevailed on the underinsured motorist claim on October 15, 2015, after the bad faith claim was stripped from the pleadings, the case resolved itself relatively quickly.  Accordingly, the undersigned finds, as an additional and alternative ground for reducing the number of hours prior to October 15, 2015, that the Plaintiffs wasted a significant amount of resources (of the parties and the Court) by attempting unsuccessfully to litigate an inappropriate claim for declaratory relief and an unaccrued bad faith claim.

All that being said, the undersigned will allow Mrs. Novak to collect attorney fees for a portion of her counsels' time entries prior to October 15, 2015.  There are certain pre-October 15, 2015 time entries identified in Mr. Kirk's expert report that even Safeco deems as appropriate expenditures in furtherance of the bad faith claim.  These include certain entries related to the filing of the Civil Remedy Notice, for example.  Doc. 84-6 at 5.  The undersigned notes there is undoubtedly other time that is recoverable, including certain aspects of Plaintiffs' investigation and the drafting of the bad faith claim that was ultimately used in the Third Amended Complaint. Doc. 81-1.  In addition, recognizing that Mrs. Novak litigated this case without delineating between the claims in any meaningful manner, and considering the fact that even Safeco agrees that certain of Mrs. Novak's pre-October 15, 2015 attorney fees are recoverable, the undersigned will award Mrs. Novak a portion of attorney fees for work billed prior to October 15, 2015. After reviewing the many pages of billing records for the time period prior to October 15, 2015,

the undersigned finds that an award of 15% of those attorney fees are properly recoverable under Fla. Stat. § 627.727(10), and the other 85% are properly excluded under Fla. Stat. § 627.727(8). *See Loranger*, 10 F.3d at 783 (where the fee motion and supporting papers are voluminous, the court need not engage in an hour-by-hour analysis).

> ii.  *The Recovery of Attorney Fees Following October 15, 2015*

As has already been stated, Mrs. Novak seeks to recover her attorney fees for the entirety of this action, from its inception to August 2016. Safeco makes several objections to the recovery of certain fees incurred after October 15, 2015. Safeco asserts that the following categories of billing time should be disallowed: (1) time spent after July 26, 2016, the date that Safeco acknowledged Mrs. Novak's right to recover reasonable attorney fees; and (2) time identified as excessive, redundant, and duplicative. Doc. 84 at 5-13. Mr. Kirk's affidavit discusses the contested billing entries in detail, including thorough charts that identify each and every contested time entry. Docs. 84-6 at 27-32; 84-7.

In particular, Safeco attacks Mrs. Novak's choice to hire two firms to represent her in this matter: Mr. Marino and his associates at and Ver Ploeg & Lumpkin P.A. and Ms. Montas of Johnson & Montas P.A. Mr. Marino and Ms. Montas served as co-lead counsel in this matter and each had paralegals who worked for them on this matter. Safeco identifies through a 14-page chart attached to Mr. Kirk's affidavit numerous instances of Mrs. Novak's counsel billing time for the communications between the four attorneys and three paralegals on the case, as well as the review of the same documents by multiple counsel. Doc. 84-7. While such internal communication and duplication of effort is not necessarily inappropriate for a paying client, the calculus changes when fees are shifted to an adversary. *See, e.g.*, *WHM LLC v. Nat'l Ass'n of Certified Home Inspectors*, Case No. 6:08-cv-864-Orl-22DAB, 2008 WL 5147367, at *3 (M.D. Fla. Dec. 8, 2008) ("The

timesheets reflect substantial redundancy such as numerous inter-office 'conferences', and other duplicative efforts that are not chargeable to one's adversary."). Considering the billing records, both as submitted by Mrs. Novak and as categorized by Mr. Kirk's affidavit, the undersigned agrees that certain time entries are duplicative, such as billing for numerous conferences between co-counsel (and paralegals), drafting emails between co-counsel (and paralegals), reviewing the work of co-counsel (and paralegals), and telephone calls between co-counsel (and paralegals). *See* Doc. 84-7. Further, many of the billing entries for these conferences, calls, and emails provide no real context for the communications, leaving the Court without any information to determine whether this constituted substantive work, or merely the delegation of work and the review of the work of others. Doc. 84-7. Upon due consideration, the undersigned finds that an overall 10% reduction of the hours billed on and after October 15, 2015 accounts for the unnecessary duplication of efforts necessitated by Mrs. Novak hiring multiple counsel in this matter.

The undersigned also agrees that the time billed after July 26, 2016 that concerns litigation over the amount of fees, rather than entitlement to fees, should not be billed. Ver Ploeg & Lumpkin P.A. billed no such time. Johnson & Montas P.A. billed 0.4 hours for such work, which will be reduced from the overall award at Ms. Montas' hourly rate.

Finally, to the extent that Safeco complains that certain of the billing entries are otherwise excessive or clerical, the undersigned finds that the reductions already identified in this Order take into account the objections of Safeco.[5]

---

[5] Safeco also complains that the fee agreement between Ver Ploeg & Lumpkin P.A. and Mrs. Novak also limits the fees Ver Ploeg & Lumpkin P.A. may recover in this case to $7,500.00. Doc. 20. The undersigned is not convinced by Safeco's calculations, and finds that, at least in this case, Ver Ploeg & Lumpkin P.A.'s fee agreement does not limit the award recommended in this report.

### d.  The Recovery of Costs

Mrs. Novak also requests costs in this matter "pursuant to the Parties' settlement."  Doc. 81 at 15.  Mrs. Novak is correct that the determination of the amount of costs is controlled by federal law in a diversity case.  *See* Fed. R. Civ. P. 54(d).   Safeco opposes the request for costs because it asserts that (1) a proposal for settlement generally includes costs, citing *White v. Steak & Ale of Fla., Inc.*, 816 So.2d 546, 551 (Fla. 2002), and (2) the Proposal for Settlement in this case did not exclude costs.  Doc. 84 at 4.  The undersigned finds that the Parties' settlement agreement controls this issue, and agrees with Safeco that the settlement in this matter included costs.  Thus, costs are not recoverable by Mrs. Novak pursuant to the Parties' settlement. [6]

Here, the Proposal for Settlement to Mrs. Novak was for $50,000 and resolved all damages "except for attorney' fees," which Safeco explicitly excluded from the settlement offer.  Doc. 84-1.  The same Proposal for Settlement warned that a failure to accept the settlement within 30 days constituted a rejection of the settlement that could entitle Safeco to "an award of attorneys' fees *and costs*."  Doc. 84-1 (emphasis added).   Thus, costs were clearly contemplated as a thing different from attorney fees in the Proposal for Settlement.

On July 26, 2016, Safeco filed a Notice of Partial Settlement that stated that Plaintiffs accepted a settlement proposal resolving all damages that could be awarded in a final judgment, with the sole exception of a reasonable attorney fee as to Mrs. Novak:  "Safeco Insurance Company of Illinois has stipulated to Mrs. Novak's entitlement to reasonable attorneys' fees.  Thus, the issue of the amount of attorneys' fees to be awarded to Mrs. Novak remains outstanding."  Doc. 70. Mrs. Novak did not object to this characterization of the settlement of the bad faith claim, and the

---

[6] The undersigned notes that, with exception of a conclusory statement, Mrs. Novak did not address whether the Proposal for Settlement included costs, and Mrs. Novak not request permission to file a reply addressing Safeco's assertion that costs were a part of the settlement amount.

Court entered judgment. Thus, although Fla. Stat. § 627.727(10) contemplates an award of attorney fees and costs for a prevailing party in a case such as this, the settlement in this case included costs, and costs are not now recoverable by Mrs. Novak.

**Conclusion**

In sum, the undersigned recommends the award of the following attorney fees as set forth in the following chart. These fees are calculated using the lodestar analysis, and represent an across-the-board reduction of 85% of the claimed hours prior to October 15, 2015, and a reduction of 10% of the claimed hours on and after October 15, 2015.

| Biller | Hourly Rates | Time Prior to October 15, 2015<br><br>Before 85% Reduction / After 85% Reduction | Time On & After October 15, 2015<br><br>Before 10% Reduction / After 10% Reduction | Total[7] |
|---|---|---|---|---|
| Stephen Marino, Jr., Esq. | $450 | 2.4 / .36 | 17.8 / 16.02 | $7,371 |
| Michal Meiler, Esq. | $225 | 24.5 / 3.675 | .4 / .36 | $908 |
| Diane Widjaya, Esq. | $230 | 5.5 / .825 | 94.6 / 85.14 | $19,772 |
| Karen Montas, Esq. | $275 | 48.2 / 7.23 | 35.1[8] / 31.59 | $10,675 |
| Cheryl Lima | $95 | 1 / .85 | 5.6 / 5.04 | $560 |
| Linda Mulhall | $125 | 0 | 1 / .9 | $112 |
| Joan Pfister | $95 | 28.2 / 4.23 | 4.1 / 3.69 | $752 |
| | | | | *$40,150* |

---

[7] This total is calculated by multiplying the hourly rate by the total hours after reduction for each time period. The hours for each time period are calculated by multiplying the hours prior to October 15, 2015 by .15 (for an 85% reduction) and the hours on and after October 15, 2015 by .9 (for a 10% reduction). There was an additional .4 hours reduced from Ms. Montas' total for time billed after July 26, 2016. The recommended fee is equal to approximately 36.5% of the total amount recovered in the entire litigation, and 79% of what was recovered in the bad faith claim.

[8] This figure accounts for the 0.4 reduction of Ms. Montas' time.

Accordingly, upon due consideration, the undersigned respectfully **RECOMMENDS** that the Motion for Attorney Fees (Doc. 81) be **GRANTED in part**, in that Mrs. Novak should be **awarded $40,150 in attorney fees**, and should be **DENIED in all other respects**.

<u>**NOTICE TO PARTIES**</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on November 18, 2016.


DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE


Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy